UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN ADMIRALTY

INTERNATIONAL SHIP REPAIR
& MARINE SERVICES, INC., as
owner of the floating drydock, DD-1,

    Plaintiff,

v.                              CASE NO.: 8:08-cv-1617-T-23AEP

ESTATE OF WILFREDO MORALES-
MONTALVO,

    Defendant,

ANIBAL ALEMAN,

    Claimant.
_____/

**<u>ORDER</u>**

The plaintiff, International Ship Repair & Marine Services, Inc. ("International Ship"), sues (Doc. 1) pursuant to the Limitation of Liability Act (the "Limitation Act").[1] The claimant, as personal representative of the estate of Wilfredo Morales-Montalvo, moves (Doc. 24) for summary judgment. International Ship opposes (Doc. 26) the motion.

---

[1] See 46 U.S.C. § 30501-30512.

## Standard of Review

Summary judgment is proper if the evidence shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A disputed fact is material if the fact "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." 477 U.S. at 248. The movant must establish the absence of a dispute over a material fact. Reynolds v. Bridgestone/Firestone, Inc., 989 F.2d 465, 469 (11th Cir. 1993). In deciding whether a dispute exists, the evidence and factual inferences from the evidence are viewed most favorably to the non-moving party. 989 F.2d at 469.

## Background

International Ship is a Delaware corporation that repairs ships and other vessels in Tampa, Florida.[2] International Ship owns a floating dry dock, DD-1, which is used to repair ships and vessels. In August, 2006, International Ship employed a crew, part of which crew International Ship procured from the subcontractor Advanced Technology, Inc. ("Advanced Technology"), to repair DD-1.[3] During the repair, DD-1 was located at berth 200 in the port of Tampa.[4] On the afternoon of August 9, 2006, a member of the

---

[2] (Doc. 26-2)

[3] (Doc. 26-2)

[4] (Docs. 1, 24-5)

- 2 -

DD-1 repair crew and an employee of Advanced Technology, Wilfredo Morales-Montalvo ("Mr. Montalvo"),[5] collapsed and died.[6]

Following Mr. Montalvo's death, the claimant filed a "petition for pure bill of discovery"[7] (the "petition") in the Circuit Court for Hillsborough County, Florida, and served International Ship with a summons.[8] The purpose of the petition was to obtain a bill of discovery, which would enable the claimant to ascertain the basis for, and the proper defendant to, any potential claim arising from Mr. Montalvo's death.[9] Before filing the petition, the claimant sent two letters to International Ship (1) notifying International Ship of both the "potential wrongful death of Mr. Montalvo" and the firm representing the claimant and (2) seeking insurance information from International Ship.[10] On April 11, 2008, the claimant moved to amend the claimant's petition and to file an amended complaint asserting a wrongful death claim against International

---

[5] (Docs. 24-5, 26-2)

[6] (Docs. 24-5, 26-2)

[7] (Doc. 24-6) The claimant filed the petition and named International Ship, Advanced Technology, and "other unknown john does" as defendants. The petition states in relevant part that the petitioner:

is uncertain who the proper Defendants to the potential wrongful death case and breach of contract case should be . . . [t]he management and policy decisions that lead to Mr. Morales-Montalvo's death are properly discoverable and should indicate which John Does should be included as Defendants in any wrongful death case to be filed.

(Doc. 24-6, ¶ 11) The petition requested a "writ of discovery," the stated purpose of which is "to determine the proper parties to a suit and to discover potential causes of action that may lie." (Doc. 24-6, ¶ 14)

[8] The claimant filed the petition on May 17, 2007, and served the summons on May 22, 2007. (Docs. 24, 24-13)

[9] See (Doc. 24-6, ¶ 14)

[10] (Docs. 26, 24-9, 24-11)

- 3 -

Ship.[11] Pursuant to the Limitation Act, International Ship initiated this action on August 18, 2008, and claimed exoneration from, or limitation of, liability "for any and all loss, damage, death, injury, or destruction relating to the death of Mr. Montalvo."[12]

A January 6, 2009, order[13] denies the claimant's motion to dismiss and motion for sanctions. In the claimant's motion for summary judgment, the claimant argues that (1) DD-1 is not a "seagoing vessel" as defined by the Limitation Act, (2) International Ship's action is not timely filed, and (3) International Ship "had privity or knowledge of negligent conditions" on DD-1.[14] International Ship disputes each assertion.

## Discussion

### 1. A "Vessel" Under the Limitation Act

The Limitation Act applies to "seagoing vessels and vessels used on lakes or rivers or in inland navigation, including canal boats, barges, and lighters." 46 U.S.C. § 30502. Historically, a drydock was excluded from the term "vessel" because of a drydock's inability to navigate and because of a drydock's "more or less permanent[]" attachment to the shore. 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 3-6 (4th ed.); The Alabama, 19 F. 544, 546 (S.D. Ala. 1884). However, the evolution of a drydock as a mobile structure capable of moving long distances meant that a drydock could qualify in admiralty as a vessel. Accordingly, a drydock that is a "'fixed structure'" or "'permanently moored'" and is "'not practically capable of being

---

[11] (Doc. 26-2)

[12] (Doc. 1)

[13] (Doc. 19)

[14] (Doc. 24)

used as a means of transportation'" is not a vessel for purposes of a federal court's admiralty jurisdiction.  See Stewart v. Dutra Constr. Co., 543 U.S. 481 (2005) (Thomas, J.) (quoting Cope v. Vallette Dry-Dock Co., 119 U.S. 625, 630 (1887)); see also Bunge Corp. v. Freeport Marine Repair, Inc., 240 F.3d 919, 925 & n.6 (11th Cir. 2001); Keller v. Dravo Corp., 441 F.2d 1239, 1244 (5th Cir. 1971)[15] (noting that controlling precedent finds that "as a matter of law, a floating drydock is not a vessel when it is moored and in use as a drydock") (citing Chahoc v. Hunt Shipyard, 431 F.2d 576 (5th Cir. 1970) and Atkins v. Greenville Shipping Corp., 411 F.2d 279 (5th Cir. 1969)); J.M.L Trading Corp. v. Marine Salvage Corp., 501 F. Supp. 323, 324 (D.C.N.Y. 1980).  In contrast, a structure that is only temporarily anchored and that is capable of navigation or transportation qualifies as a vessel.  See Stewart, 543 U.S. at 493-94 (501 F. Supp. at 324-25; United States v. Moran Towing & Transp. Co., 374 F.2d 656 (4th Cir. 1967), vacated on other grounds, 389 U.S. 575 (1968).

Interpreting 1 U.S.C. § 3, Stewart holds that a dredge[16] is a "vessel" under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 902(3)(G). Stewart finds that under 1 U.S.C. § 3, a "vessel" is "any watercraft practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment."  Title 46 of the United States Code, Section 115, incorporates the definition of "vessel" under 1 U.S.C. § 3 by stating that "[i]n this title, the term "vessel"

---

[15] Bonner v. Prichard, 661 F.2d 1206 (11th Cir. 1981) adopts as binding precedent all former Fifth Circuit Court of Appeals decisions issued before October 1, 1981.

[16] The dredge, the aptly named the "Super Scoop," was the world's largest dredge employed in digging a tunnel under South Boston and the Boston Harbor as part of Boston's "Central Artery/Tunnel Project," otherwise known as the "Big Dig."  543 U.S. at 484.

- 5 -

has the meaning given that term in section 3 of title 1." Accordingly, the interpretation of "vessel" in Stewart applies to an action under the Limitation Act.[17]

In arguing that DD-1 is not a vessel as defined by the Limitation Act, the claimant asserts (1) that "DD-1's primary use is as a stationary structure," which structure is "secured to the sea floor or wharf and . . . thereby merely an extension of the land," (2) that DD-1 possesses no "means of self[-]propulsion, no means of steering, and is not suitable for practicable navigation or transportation;" and (3) that DD-1 could "theoretically provide transportation, if towed," but DD-1 is "not fit for navigation or transportation beyond incidental movement.[18] In opposition, International Ship argues (1) that DD-1 is "fully capable of maritime transportation;" (2) that DD-1 is "not tethered, moored[,] or otherwise affixed to any one spot;" and (3) that the evidence supporting the claimant's assertion that DD-1 is not suitable for navigation or transportation is "neither supported by the record nor true."[19]

The claimant fails to show the absence of a genuine issue of material fact as to DD-1's status as a vessel. The testimony[20] on which the claimant relies establishes neither the assertion that DD-1 is "not suitable for practicable navigation or

---

[17] 46 U.S.C. § 30501-30512. Notably, Stewart discusses a case finding that a drydock is not a vessel in admiralty. As Stewart explains, the drydock in that case was a permanently moored, fixed structure and not a structure capable of engaging in transportation. 543 U.S. at 494 ("Simply put, a watercraft is not 'capable of being used' for maritime transport in any meaningful sense if it has been permanently moored or otherwise rendered practically incapable of transportation or movement.").

[18] (Docs. 24, 24-4, 24-5) Additionally, the claimant argues that DD-1(1) is not designed to travel more than twelve nautical miles from the Gulf Coast and (2) regularly operates within twelve nautical miles of the coast.

[19] (Docs. 26, 26-2)

[20] Deposition of Kirk P. Suchier ("Suchier Depo"), February 5, 2008, at 20; Sworn Statement of Edwin Ruiz ("Ruiz Statement"), October 29, 2008, at 19. (Docs. 24-4, 24-5)

- 6 -

transportation" nor that DD-1 is not "practically capable of maritime transportation" as defined by Stewart.

*2. Timeliness of the Complaint*

After receiving "written notice of a claim" the owner of a vessel has six months in which to sue under the Limitation Act. 46 U.S.C. § 30511(a). The purpose of the six-month limit is to curb the "abusive," dilatory practice of a vessel owner's waiting "'until after the question of liability ha[s] been litigated and determined against [the shipowner]'" to institute a limitation action. Paradise Divers, Inc. v. Upmal, 402 F.3d 1087, 1090 (11th Cir. 2005) (per curiam) (quoting Deep Sea Tankers, Ltd. v. The Long Branch, 258 F.2d 757, 772 (2d Cir. 1958)). Because the Limitation Act fails to define "written notice of a claim," one of two "similar" tests determines "whether a writing contains all the information needed to constitute . . . 'written notice of [a] claim' . . . ." P.G. Charter Boats, Inc. v. Soles, 437 F.3d 1140, 1143 (11th Cir. 2006) (per curiam). Under the first test, "notice is sufficient if 'it informs the vessel owner of an actual or potential claim . . . which may exceed the value of the vessel . . . and is subject to limitation.'" 437 F.3d at 1143 (quoting Paradise Divers, 402 F.3d at 1090 (finding that notice must "reveal a 'reasonable possibility' that the claim made is one subject to limitation") (quoting In re McCarthy Bros. Co./Clark Bridge, 83 F.3d 821 (7th Cir. 1996))). Under the second test, a writing must "'(1) demand a right or supposed right; (2) blame the vessel owner for any damage or loss; and (3) call upon the vessel owner for anything due to the claimant.'" 437 F.3d at 1143 (quoting 402 F.3d at 1090).

"Although the notice of claim need not be presented in a particular form, it must inform the owner of the claimant's intention to seek damages from the owner." Rodriguez Morira v. Lemay, 659 F. Supp. 89, 90 -91 (S.D. Fla.1987); see, e.g, Paradise Divers, 402 F.3d at 1088 (finding notice to the vessel owner through correspondence that notified the vessel owner's attorney of both the plaintiff's claim against the vessel owner and the plaintiff's intent to pursue claims against the vessel owner for negligence and maintenance and cure). "[I]n the typical case, the filing of a complaint serves as written notice of a claim." 83 F.3d at 829 (finding that "[b]efore a complaint is filed, delay on the part of the shipowner is harmless-certainly no judicial proceedings have begun-and the purpose of the six-month limitation is not yet actuated."). However, a letter from a claimant may qualify as "written notice of a claim." In re Paradise Divers, Inc., 2003 WL 25731109, *4 (S.D. Fla. 2003); 83 F.3d at 829-30 (noting that a claimant is held to a "fairly high level of specificity" in a letter because of the danger that a claimant "may nullify a shipowner's right to file a limitation action by sending a cryptic letter and then waiting more than six months to file a complaint.").

In this instance, neither letter constitutes "written notice of a claim" to International Ship. Each letter merely (1) notifies International Ship that Gossett Law Offices, P.A., represents the claimant "in the matter of a potential wrongful death of Mr. Montalvo" and (2) requests a statutorily required[21] disclosure of insurance information. Neither letter (1) demands a right or "supposed right," (2) blames International Ship for Mr. Montalvo's death, or (3) demands that International Ship provide something due to

---

[21] See Fla. Stat. 627.4137.

- 8 -

the claimant. Indeed, neither letter contains any statement evidencing the claimant's intent to file a wrongful death action against International Ship.

The petition also fails to constitute "written notice of a claim." The petition itself is not a claim against International Ship but rather a method by which the claimant may ascertain whether a claim exists. The petition requests a bill of discovery so that the claimant may "determine the proper parties to a suit and . . . discover potential causes of action that may lie." Nothing in the petition either shows the claimant's intent to seek damages from International Ship or seeks to hold International Ship responsible for Mr. Montalvo's death. Even if the petition provides "adequate notice of a claim subject to limitation," nothing demonstrates that the claim "would exceed the value of the vessel." See McCarthy Bros, 83 F.3d at 829. Accordingly, International Ship's action is timely because International Ship filed the action within six months after the claimant's moving for leave to amend the petition and assert a wrongful death claim against International Ship.

### *3. International Ship's "Privity or Knowledge"*

The Limitation Act covers "claims, debts, and liabilities" that derive from "an act, matter, or thing, loss, damage, or forfeiture, done occasioned, or incurred, without the privity or knowledge of the owner." 46 U.S.C. § 30505. In moving for summary judgment, the claimant asserts that International Ship "knew or through the exercise of reasonable diligence could have known of the negligent conditions giving rise to [Mr. Montalvo's] demise."[22] As evidence of International Ship's "privity or knowledge," the

---

[22] (Doc. 24)

- 9 -

claimant presents a citation from the Occupational Safety and Health Administration ("OSHA") that OSHA delivered to International Ship after Mr. Montalvo's death.[23] Additionally, the claimant cites the deposition of Kirk Suchier, an International Ship superintendent, who "was present on the job site . . . [and] knew of the heat conditions, lack of training, lack of proper equipment, and other conditions that caused and/or contributed to [Mr. Montalvo's] death . . . ."[24]

The claimant's evidence, however, neither establishes "privity or knowledge" nor warrants summary judgment in this action. Because Mr. Montalvo was not an employee of International Ship, Mr. Montalvo is "not a member of the class sought to be protected under OSHA regulations." Cole v. Noble Drilling Corp., 2007 WL 2475944, *4 (S.D. Miss. 2007). Therefore, International Ship's violating an OSHA regulation fails to establish negligence as a matter of law by International Ship. See Melerine v. Avondale Shipyards, Inc., 659 F.2d 706, 707 (5th Cir. 1981); 2007 WL 2475944 at *4. Furthermore, the OSHA citation is insufficient to establish knowledge of a dangerous condition at the time of Mr. Montalvo's death. As for Kirk Suchier's testimony, Suchier testified (1) that Suchier visited the job site twice on the day of Mr. Montalvo's death[25] and (2) that the weather was warm.[26] Suchier's testimony fails to establish (1) that the

---

[23] The OSHA citation asserts that International Ship violated Section 5(a)(1) of the Occupational Safety and Health Act of 1970 by failing to "furnish employment and a place of employment which were free from recognized hazards that were causing or likely to cause death or serious physical harm to employees in that . . . employees working as shipfitters and welders at extreme hot temperatures were exposed to the hazards associated with heat stress." (Doc. 24-14)

[24] Suchier Depo. at 14.

[25] Suchier Depo. at 14.

[26] Suchier Depo. at 22.

- 10 -

DD-1 repair crew lacked training,[27] (2) that the DD-1 repair crew lacked proper equipment,[28] or (3) that Suchier knew of other conditions that caused Mr. Montalvo's death. In addition, International Ship presents evidence refuting each of the claimant's assertions.[29]

### Conclusion

Accordingly, because International Ship timely filed the complaint in this action and because the claimant fails to show the absence of a disputed issue of material fact, the claimant's motion for summary judgment (Doc. 24) is **DENIED**.

ORDERED in Tampa, Florida, on January 12, 2010.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[27] Suchier Depo. at 23.

[28] Suchier Depo. at 15, 22-23.

[29] (Doc. 26-2)